UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BRANDALY ARROYO TORRES,

    Plaintiff,

v.                                     Case No:   6:16-cv-1888-Orl-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Brandaly Arroyo Torres, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") regarding her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.    Social Security Act Eligibility, Standard of Review, Procedural History, and Statement of Facts**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989).  There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE").  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed applications for a period of disability, DIB and SSI on November 11, 2011, alleging disability commencing on March 13, 2010.  (Tr. 362-73).  Plaintiff's claims were denied initially on October 28, 2008, and upon reconsideration on March 6, 2009. (Tr. 39-41, 45-47, 921-26).  Plaintiff's alleged onset date was subsequently amended to March 15, 2011. (Tr. 397) (the ALJ misstated Plaintiff's alleged onset date as May 15, 2011, in both hearing decisions).  Plaintiff's claims were denied at the initial and reconsideration levels. (Tr. 215-26, 228-37).  Plaintiff requested a hearing and, on November 12, 2013, a hearing was held before Administrative Law Judge ("ALJ") Pamela Houston. (Tr. 53-97).  On January 27, 2014, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 180-206). Plaintiff appealed and, on January 15, 2015, the Appeals Council issued a remand order. (Tr. 207-211).

On remand, the ALJ held a second hearing on September 9, 2015. (Tr. 98-125).  On October 19, 2015, the ALJ entered a second decision finding that Plaintiff was not disabled. (Tr. 26-52).  Plaintiff appealed the ALJ's decision, but the Appeals Council denied Plaintiff's request for review on August 26, 2016. (Tr. 1-7).  On October 27, 2016, Plaintiff initiated the current action by Complaint (Doc. 1).  The case is now ripe for review pursuant to 42 U.S.C. § 405(g).

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 15, 2011, the alleged onset date. (Tr. 31). At step two, the ALJ found that Plaintiff had the following severe impairments: status post lumbar surgery with residual pain, mitral valve regurgitation, supraventricular tachycardia, right carpal tunnel syndrome, and anxiety. (Tr. 31). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 32).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she will need to sit at the work station 50% of the workday. Claimant can perform no more than occasional balancing, stooping, crouching, crawling, kneeling and climbing but never ladders, ropes, or scaffolds. Bilateral handling and fingering are frequent. Avoid: work at heights, work with dangerous machinery, constant vibration, constant temperatures over 90 degrees and over 45 degrees Fahrenheit, and overhead lifting. Work tasks should be simple 1 to 5 steps each, learned in 30 days or less, and performed repetitively. No more than frequent interaction with coworkers, supervisors, and the general public.

(Tr. 33). At step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a buffet attendant, housekeeper, office manager, credit manager, sales clerk, or housekeeper cleaner. (Tr. 42).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 43). Specifically, the ALJ found that Plaintiff can perform such occupations as parking lot attendant, ticket seller, and cashier II. (Tr.

43). The ALJ concluded that Plaintiff had not been under a disability from May 15, 2011, through the date of the decision, October 22, 2015. (Tr. 44).

**II.   Analysis**

Plaintiff raises six issues on appeal: (1) whether the ALJ erred at step two by failing to identify all of Plaintiff's severe impairments; (2) whether the ALJ erred at step five by finding that Plaintiff can perform jobs that require the performance of the full range of light work despite finding that Plaintiff's RFC is a reduced range of light work; (3) whether the ALJ erred by improperly evaluating Plaintiff's difficulties in social functioning; (4) whether the ALJ erred by failing to properly evaluate the opinion of an advanced registered nurse practitioner; (5) whether the ALJ erred by finding Plaintiff capable of frequent bilateral handling and fingering despite finding Plaintiff had the severe impairment of carpal tunnel syndrome; and (6) whether the ALJ erred in her consideration of consultative examiner Dr. Austin's findings and opinions.  The Court will address each issue in turn.

> **A.   Whether the ALJ erred at step two by failing to identify all of Plaintiff's severe impairments.**

Plaintiff argues that the ALJ committed reversible error by not finding that Plaintiff had the severe impairments of PTSD, major depressive disorder, hernia, migraine headaches, Lyme disease, and lung nodules. (Doc. 24 p. 21).  Plaintiff argue that each of these medical impairments satisfies the requirement of being a severe impairment because these conditions have more than a minimal effect on her ability to work. (Doc. 24 p. 21).  In response, Defendant argues that the ALJ satisfied the requirements of step two by finding that Plaintiff had some severe impairments, even if she did not include the medical impairments listed by Plaintiff. (Doc. 24 p. 22).

At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to

work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the ALJ satisfied the requirements of step two by finding that Plaintiff had multiple severe impairments. Any error the ALJ made by failing to find that Plaintiff had additional severe impairments was harmless.

### B. Whether the ALJ erred at step five by finding that Plaintiff can perform jobs that require the performance of the full range of light work despite finding that Plaintiff's RFC is a reduced range of light work.

Plaintiff argues that the ALJ erred by failing to resolve a conflict between her RFC and step five findings. (Doc. 24 p. 24). Specifically, Plaintiff argues that while the ALJ found that Plaintiff has the RFC to perform light work, "except she will need to sit at the workstation 50% of

the workday," the ALJ at step five found that an individual with Plaintiff's RFC could perform such jobs as parking lot attendant, ticket seller, and cashier II. Plaintiff contends that an individual who needs to sit for 50% or half of a workday cannot perform work at the light exertional level. (Doc. 24 p. 25-26).

In response, Defendant argues that Plaintiff mischaracterizes the ALJ's RFC assessment and the law. (Doc. 24 p. 26). Plaintiff argues that light work encompasses jobs that involve sitting most of the time and that the ALJ properly relied on the vocational expert's testimony at step five that Plaintiff is capable of performing the work as a parking lot attendant, ticket seller, and cashier II. (Doc. 24 p. 27-28).

Here, the Court finds that the ALJ did not err by finding that Plaintiff was capable of a reduced range of light work and that she was capable of performing the jobs identified by the vocational expert. Light work is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing -- the primary difference between sedentary and most light jobs. **A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work**; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

Social Security Ruling (SSR) 83-10 (emphasis added). Thus, the ALJ's finding that Plaintiff was limited to sitting 50% of the workday is not necessary inconsistent with the requirements of light work. Further, the ALJ based her findings on the testimony of a vocational expert who testified that an individual with Plaintiff's limitations could perform thousands of light jobs. (Tr. 122-23). The hypothetical question posed by the ALJ to the vocational expert encompassed all of Plaintiff's

impairments, therefore, the vocational expert's testimony constituted substantial evidence. *Jones v. Apfel*, 190 F.3d 1254, 1229 (11th Cir. 1999).

### C. Whether the ALJ erred by improperly evaluating Plaintiff's difficulties in social functioning.

The Appeals Council's remand order provided the following:

> The decision does not contain an adequate evaluation of the claimant's mental residual functional capacity. The decision found that the claimant's mental impairments limit the claimant to tasks that are reduced to simple 1-5 steps that can be independently done over 30 days training (Decision, Finding 5). This mental residual functional capacity, however, does not account for the claimant's moderate limitations in social functioning (Decision, p. 4). Further, the State agency consultant, Dorothy Holmes, Ph.D., opined the claimant would have difficulties relating with the public, showing limited tolerance, will function best with modest social demands and will have difficulties accepting direction and feedback in general from peers and supervisors, and limited her to minimal interaction with the general public and coworkers (Exhibit 8A, page 10). The decision does not specifically weigh this opinion, nor does it provide reasons for not including these limitations in the residual functional capacity. As such, a more comprehensive discussion of the impact of the claimant's mental limitation on the claimant's residual functional capacity is required.

(Tr. 208).

Plaintiff argues that the ALJ committed reversible error by failing to comply with the Appeals Council's remand order. Specifically, Plaintiff argues that the ALJ's decision is contradictory because while the ALJ found that Plaintiff has moderate difficulties in social functioning, she also found that Plaintiff could perform "[n]o more than frequent interaction with coworkers, supervisors, and the general public." (Doc. 24 p. 28) (citing Tr. 33). Plaintiff contends that the limitation included in the ALJ's assessment does not comply with the remand order's requirement for the ALJ to conduct a more comprehensive discussion of the impact of Plaintiff's mental limitations on Plaintiff RFC. (Doc. 24 p. 29). Further, Plaintiff argues that the ALJ did not

- 9 -

comply with the remand order because did specify the weight accorded Dr. Holmes' opinion and did not provide any rationale for dismissing the opinion. (Doc. 24 p. 29).

Defendant argues that the ALJ complied with the Appeals Council's remand order by assessing Plaintiff's mental limitations and including a restriction to no more than frequent interactions with the public, coworkers, and supervisors. (Doc. 24 p. 30).

Here, the Court finds that the ALJ complied with the Appeal Council's remand order. In accordance with the remand order, the ALJ's second decision included a limitation related to Plaintiff's moderate social functioning, i.e., a restriction to no more than frequent interaction with the public, coworkers, and supervisors. (Tr. 33). "Frequent" is defined as occurring from one-third to two-thirds of the time. SSR 83-10. Despite Plaintiff's argument, the Court finds no necessary inconsistency between the ALJ's finding that Plaintiff had moderate limitations in social functioning at step three and her finding that Plaintiff is restricted to no more than frequent interaction with the public, coworkers, and supervisors. The ALJ explained her reasoning in her decision and her findings are supported by substantial evidence. (Tr. 33).

As to the ALJ's treatment of Dr. Holmes' opinion, Plaintiff is correct that the ALJ did not state the weight she accorded it. Plaintiff acknowledges, however, that the ALJ did discuss the opinion in the second decision. There is no principle of administrative law or common sense that requires remand in quest of a perfect opinion and remand is not essential if it will amount to nothing more than an empty exercise. *Stanton v. Astrue*, 617 F.Supp.2d 1205, 1222 (M.D. Fla. 2008) (citing *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) and *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)). Here, the ALJ's analysis makes it clear that the decision was rejected to the extent it provides limitations greater than found by the ALJ in her RFC assessment. For this

reason, it would amount to an empty exercise to remand the case for the ALJ to specify this more clearly.

### D. Whether the ALJ erred by failing to properly evaluate the opinion of an advanced registered nurse practitioner.

Plaintiff argues that the ALJ erred by giving no or little weigh to the opinion of advanced registered nurse practitioner (ARNP) Danielle Swap primarily because she was not "an acceptable medical source." (Doc. 24 p. 34) (citing Tr. 38). In response, Defendant argues that the ALJ cited multiple, appropriate, and fully supported reasons for giving no weight to Ms. Swap's opinion. (Doc. 24 p. 41).

The record shows that on July 25, 2013, Ms. Swap, completed a "Medical Statement Regarding Heart Failure for Social Security Disability Claim." (Tr. 686-688). She noted that Plaintiff has fatigue on exertion, pulmonary congestion, anginal discomfort, tachycardia, persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living, and inability to perform on and exercise tolerance test at a workload equivalent to 5 METs or less. (Tr. 686). She found that Plaintiff is in NYHA Class III, indicating "patients with marked limitation of activity; they are comfortable only at rest." (Tr. 687). The ARNP opined that Plaintiff can: stand and sit for 15 minutes at one time, lift 20 pounds occasionally, 5 pounds frequently, occasionally perform fine or gross manipulation with both hands, and never raise either arm of shoulder level. (Tr. 687). She would need to constantly elevate her legs during an 8-hour workday and use an assistive device to ambulate. (Tr. 687). The ARNP noted extreme pain in Plaintiff with the following objective signs of pain: cardiac/angina, post-surgical syndrome/adhesions, joint deformity, muscle spasm, arthritic changes, disc abnormality, and limitation of motion. (Tr. 687). Plaintiff would need frequent breaks and absences due to pain.

(Tr. 688). She has significant shortness of breath on exertion and inability to ambulate effectively. (Tr. 688).

In her decision, after thoroughly reviewing Ms. Swap's medical statement, the ALJ explained the weight she accorded the statement as follows:

> No weight is given to Ms. Swap's reports and opinions for many reasons. First, she is not an acceptable medical source. Second, claimant did not have persistent symptoms of heart failure. Third, there are no exams with ongoing shortness of breath, difficulty ambulating, or problems with noise. Third, Ms. Swap opines to daily tasks of which she has no knowledge. Claimant travels the community, shops, attends church, pays bills, lives independently, does personal care, prepares meals, drives, reads, and attends appointments. Fourth, had Ms. Swap based this report on exam findings in claimant's records that are presumed to be in Ms. Swap's possession, she would see virtually all normal findings from physical exams and testing. Ms. Swap's findings are not supported by her own examinations, and the limitations she imposes upon claimant's activities are not justified by any evidence of record.

(Tr. 38).

"While nurse practitioners are not 'acceptable medical sources' for establishing an impairment, 20 C.F.R. §§ 404.1513(a), 416.913(a), they are nonetheless considered an 'other' medical source whose testimony may be used 'to show the severity of … impairment(s) and how it affects [the] ability to work.' 20 C.F.R. § 404.1513(d)(1)." *Colon v. Colvin*, 2013 WL 4890312, at *2 (M.D. Fla. Sept. 11, 2013). Opinions from "other sources" are not entitled to any particular deference. *Adams ex rel. A.M.P. v. Astrue*, 2012 WL 2923918, at *5 (N.D. Ala. July 16, 2012). An ALJ should generally explain the weight given to opinions from "other sources," or "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

Here, the Court finds that the ALJ did not primarily reject the opinion on the basis that Ms. Swap was not an acceptable medical source. The ALJ's discussion of the opinion shows that she

seriously considered Ms. Swap's findings and articulate good reason for rejecting the opinion. Substantial evidence supports the ALJ's findings and, thus, the Court finds no error in the ALJ's treatment of Ms. Swap's opinion.

> **E. Whether the ALJ erred by finding Plaintiff capable of frequent bilateral handling and fingering despite finding Plaintiff had the severe impairment of carpal tunnel syndrome.**

Plaintiff argues that the ALJ erred by finding that Plaintiff can perform frequent bilateral handling and fingering because substantial evidence does not support such a finding. (Doc. 24 p. 41). Plaintiff also argues that the ALJ's finding contradicts her other finding that Plaintiff has the severe impairment of carpal tunnel syndrome as these two findings are "inherently in conflict." (Doc. 24 p. 41). Finally, Plaintiff argues that Plaintiff's use of an assistive device precludes her from being able to frequently handle and finger. (Doc. 24 p. 43). In response, Defendant argues that the ALJ reconciled his finding that Plaintiff had a severe impairment of right carpal tunnel syndrome with a finding that Plaintiff was limited to frequent bilateral handling and fingering. (Doc. 24 p. 44).

Here, the Court finds that the ALJ did not err in his consideration of Plaintiff's carpal tunnel syndrome. Contrary to Plaintiff's claim, the finding that Plaintiff's carpal tunnel syndrome is a severe impairment is not "inherently in conflict" with the finding that Plaintiff is capable of performing frequent bilateral handling and fingering. According to the Eleventh Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). "An impairment may meet this minimal definition of severity without materially affecting the claimant's RFC." *Davis v. Comm'r of Soc. Sec.,* 2013 WL 6182235, at *6 (M.D. Fla. Nov. 25,

2013). Plaintiff cites no authority to support her claim that a limitation to frequent (i.e., from one-third to two-thirds of the time) bilateral handling and fingering is inconsistent with finding carpal tunnel syndrome is a severe impairment. Likewise, Plaintiff cites no authority showing that the Plaintiff's use of a handheld assistive device precludes frequent handling and fingering.

In her decision, the ALJ considered Plaintiff's testimony that she has carpal tunnel syndrome in both hands, that her fingers swell, and that she cannot lift a gallon of milk and she would drops things. (Tr. 39). The ALJ, however, concluded that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 39). The ALJ explained, "A state agency physician, Janet Gibson, D.O. (Exhibit 8A) had the opportunity to review the medical evidence and other reports. He opined that claimant's physical impairments were nonsevere and therefore she had no limitations, physically." (Tr. 39, 165-75). Further, the ALJ explained, "Dr. Afzal, the claimant's treating physician, has not placed any limitations on the claimant." (Tr. 40). The ALJ's cited Dr. Afzal's release to work as further evidence. (Tr. 40). The ALJ cited clinical findings in support of his RFC assessment, noting that "all exams show no motor or sensory deficits, with normal back inspections. She had full range of motion of extremities 2F/77-83; 9F; 15F; 17F; 21F/1-10; 24F/74-76, 92-98; 27F)." Substantial evidence supports the ALJ's RFC finding concerning Plaintiff's ability to handle and finger and the Court will not disturb the ALJ's findings on appeal.

> **F. Whether the ALJ erred in her consideration of consultative examiner Dr. Austin's findings and opinions.**

The Appeals Council's remand order provided the following:

> The decision does not fully consider the opinion by consultative examiner, William W. Austin, Psy.D. After a comprehensive mental status examination, Dr. Austin opined that the claimant's functional ability is poor based on current symptoms (Exhibit 8F, page 4). The decision discusses Dr. Austin's opinion, but the decision does not specify the weight afforded to this opinion, nor does it include reasons for rejecting this opinion. While the Administrative Law Judge is not bound by Dr. Austin's opinion, it must be fully evaluated and the weight assessed to the opinion must be noted.

(Tr. 208).

Plaintiff argues that the ALJ erred by failing to fully comply with the Appeals Council's remand order regarding consultative examiner Dr. Austin's findings and opinions. (Doc. 24 p. 45). Plaintiff contends that ALJ did not state the weight accorded to Dr. Austin's opinion or fully evaluate it in accordance with the Appeals Council's remand order. (Doc. 24 p. 45-46). Defendant argues that the ALJ properly stated the weight he gave to Dr. Austin's opinion, cited the reasons for the weight, and identified substantial evidence in support of those reasons. (Doc. 24 p. 47).

The record shows that Plaintiff underwent a General Clinical Evaluation with Mental Status Examination on March 27, 2012, conducted by William W. Austin, Psy. D., and Jessica Roman, Psy. D. (Tr. 618-622). The evaluation indicated Plaintiff was able to drive, handle funds, and prepare meals. (Tr. 620). She said she had help with personal care, cleaning, and cooking (Tr. 620). She looked for employment online. (Tr. 620). She talked to her mom by telephone on a regular basis and attended church on a weekly basis, although she reported having no friends. (Tr. 620). She reported that she had had no mental health treatment since her 1989 hospitalization. (Tr. 618-22).

Dr. Austin's mental status examination of Plaintiff showed she had good basic functioning and hygiene, with appropriate and cooperative behavior. (Tr. 620). Her speech was logical and coherent. (Tr. 620). She had no difficulty focusing on interview questions. (Tr. 36, 618-22). Her

- 15 -

memory and recall were normal and she had no evidence of a thought process deficit, psychosis, hallucinations, or delusions. (Tr. 36, 620-21). Her judgment, impulse control, and insight were adequate. (Tr. 36, 621). Her mood appeared depressed congruent affect. (Tr. 621).

The mental professional examiners made the following findings with regard to functional ability: "Social functioning is moderate based on some interaction with same age peer group; Functional ability is poor based on current symptoms." (Tr. 621). From their examination, they made the following Axis I diagnoses: Posttraumatic Stress Disorder; Major Depressive Disorder, Recurrent, Moderate. (Tr. 621). From "clients report," they made the following Axis III diagnoses: Erosive Esophagitis, Chronic Acid Reflux, Six Nodules on Lungs, Heart Problems, Fibrillations, Tachycardia, Supraventricular Disorder, Leaky Heart Valve, Scoliosis, Osteoporosis, Rheumatoid, Lyme's Disease, Sciatica Chronic Migraine Headaches, and possible Ruptured Eardrum. (Tr. 621). With regards to Activities of Daily Living, the examiners found "She is not able to complete acts of self-care independently, due to needing assistance with dressing herself, cleaning the house, and cooking. On a typical day, Brandaly remains home and tries to do chores around the house." (Tr. 620).

In her decision, the ALJ addressed Dr. Austin's findings as follows:

> The mental status evaluation with Dr. Austin showed her attention and concentration within normal limits. She was able to spell the word "world" forward and backwards. She was able to recall three words after a three-minute delay. Her memory of recent events was intact. Her mood did appear depressed and she was tearful. Her judgment, impulse control and insight were adequate. Dr. Austin opined that the claimant's social functioning was moderate. He indicated her functional ability was poor based on current symptoms. However, if she would seek treatment and/or medications her mental status would likely improve. **Therefore, the opinion that the claimant's functional ability was poor based on current symptoms is accorded little weight**, as she has not sought treatment and/or medications to alleviate her symptoms. Moreover, Dr. Austin opined that the claimant's GAF was 55, indicating some moderate limitations in social and occupational functioning. The claimant is able to

> live alone; she can drive and attend doctors' appointments; she can shop and prepare simple meals; and, she requested a work released in August 2012. Therefore, at most, the undersigned finds that the claimant is limited to a tasks that would be simple, learned in 30 days or less and each task should be about 1-5 steps, performed repetitively. The claimant should have no more than frequent interactions with coworkers, supervisors and the general public.

(Tr. 41) (emphasis added). The Court finds that the ALJ's discussed and weighed Dr. Austin's opinion in accordance with the remand order. Accordingly, the Court finds no basis to remand this case for further proceedings.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on March 9, 2018.

*[Signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties